# Exhibit "5"

# TRADEMARK ASSIGNMENT COVER SHEET

Electronic Version v1.1  
Stylesheet Version v1.2

ETAS ID: TM583483

| SUBMISSION TYPE: | CORRECTIVE ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | Corrective Assignment to correct the entire improper assignment previously recorded on Reel 006896 Frame 0518. Assignor(s) hereby confirms the assignment of entire interest. |

### CONVEYING PARTY DATA

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| DEVOLRO, INC. | | 06/29/2020 | Corporation: FLORIDA |

### RECEIVING PARTY DATA

| Name: | DEVOLRO, INC. |
|---|---|
| Street Address: | 15701 NW 15th Ave |
| City: | Miami |
| State/Country: | FLORIDA |
| Postal Code: | 33169 |
| Entity Type: | Corporation: FLORIDA |

### PROPERTY NUMBERS Total: 1

| Property Type | Number | Word Mark |
|---|---|---|
| Registration Number: | 4331785 | DEVOLRO |

### CORRESPONDENCE DATA

Fax Number:        3054458484

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

Phone:            3054471617  
Email:            legal@sanchelima.com  
Correspondent Name:    Christian Sanchelima  
Address Line 1:      235 SW Le Jeune Rd  
Address Line 4:      Miami, FLORIDA 33134

| ATTORNEY DOCKET NUMBER: | 400359 |
|---|---|
| NAME OF SUBMITTER: | Christian Sanchelima |
| SIGNATURE: | /Christian Sanchelima/ |
| DATE SIGNED: | 06/29/2020 |

**Total Attachments: 6**  
source=200629le.SignedDeclVasilii#page1.tif  
source=200629le.SignedDeclVasilii#page2.tif  
source=200629le.SignedDeclVasilii#page3.tif

OP $40.00 4331785

source=200629le.SignedDeclVasilii#page4.tif
source=200629le.SignedDeclVasilii#page5.tif
source=200629le.SignedDeclVasilii#page6.tif

## DECLARATION OF VASILII BOBKOV

Vasilii Bobkov, pursuant to 28 U.S.C. §1746, declares as follows:

1. I am the current president and director of Devolro, Inc.

2. On September 12, 2012, Devolro, Inc. filed a trademark application (Serial No. 85726802) for the mark DEVOLRO for vehicle parts, namely, bumpers, suspension systems and lift kits in International class 012. The mark application matured into U.S. Reg. No. 4331785.

3. On April 19, 2019, former president and sole shareholder of Devolro, Inc., Eduard Orlov, sold 100% of its shares to me. I have been the president and sole shareholder of Devolro, Inc. since April 19, 2019. *See* Exhibit 1, corresponding to the Share-Purchase Sale Agreement.

4. On March 20, 2020, Eduard Orlov improperly filed, without the authorization of Devolro, Inc., an assignment purporting to transfer the rights of the mark registration DEVOLRO (U.S. Reg. No. 4331785) to himself. The assignment was recorded on reel/frame 6896/0518.

5. Since Eduard Orlov was not authorized to sign on behalf of Devolro, Inc. and because Devolro, Inc. did not authorize the assignment, the assignment recorded on reel/frame 6896/0518 was erroneous.

6. Devolro, Inc. was the last correct owner and has been and continues to be the owner of the mark registration for DEVOLRO (U.S. Reg. No. 4331785).

7. Devolro, Inc. is currently owned by American Technology Ventures, LLC, of which I am an authorized member.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 29, 2020

Vasilii Bobkov

# Exhibit 1

TRADEMARK
REEL: 006986 FRAME: 0256

## SHARE-PURCHASE AGREEMENT

This Agreement is made as of the 10 day of April, 2019 by and between Eduardo Orlov ("Seller") and Vasilii Bobkov ("Buyer") and Devolro, INC, a Florida Corporation ("Corporation").

### Recitals

A.  Seller is the owner of 100 shares of the outstanding and issued common stock of the Corporation;

B.  Seller desires to sell a total of 100 shares of common stock of Corporation to Buyer;

C.  Buyer desires to purchase an aggregate of 100 shares of common stock of Corporation from Seller;

THEREFORE, in consideration of the promises and mutual covenants made in this Agreement, it is agreed as follows:

### Sale of Shares

1. Seller shall sell to Buyer a total of 100 shares of common stock of the Corporation standing in the Seller's name in one installment. Seller shall execute the necessary documents affecting the transfers when Buyer tenders to Seller the purchase price for all shares.

### Purchase Price

2. Buyer shall pay to Seller the total sum of $20, as payment for the shares.

### Seller's Representation and Warranties

3. Seller represents, warrants, and agrees as follows:

(a) The 100 shares of common stock of the Corporation constitute all of the issued and outstanding shares of Corporation.

(b) The Seller has good and marketable title to the shares of common stock standing in his name and, on full execution of this Agreement, owns the issued and outstanding shares of the Corporation with the absolute right to sell, assign, and transfer them free and clear of all liens, pledges, and encumbrances of any kind.

(c) All issued and outstanding shares of the Corporation are fully paid and nonassessable. No outstanding subscriptions, options or other agreements obligate the Corporation to issue additional shares of its capital stock or any other securities of any kind or class.

### Acknowledgment

4. Buyer, Seller, and the Corporation acknowledge to each other that this Agreement shall not be deemed to give the Seller any right to continued employment by the Corporation.

## Conditions and Best Efforts

5. Seller will use his best efforts to effectuate the transactions contemplated by this Agreement and to fulfill all the conditions of the obligations of Seller under this Agreement, and will do all acts and things as may be required to carry out their respective obligations under this Agreement and to consummate and complete this agreement.

## Survival Of Representations and Warranties

6. All representations and warranties made in this Agreement shall survive the execution of this Agreement, except that any party to whom a representation of warranty has been made in this Agreement shall be deemed to have waived any misrepresentation or breach of representation or warranty which such party had knowledge prior to execution. Any party learning of a misrepresentation or breach of representation or warranty under this Agreement shall immediately give notice thereof to all other parties to this Agreement. The representations and warranties in this Agreement shall terminate three (3) years from the closing date, and such representations or warranties shall thereafter be without force or effect, except any claim with respect to which notice has been given to the party to be charged prior to such expiration date.

## Sellers Indemnification

7. Seller hereby agrees to indemnify and hold Buyer, its successors and assigns harmless from and against:

(1) Any and all claims, liabilities and obligations of every kind and description, contingent or otherwise, arising out of or related to the operation of Seller's business prior to midnight on the day before the closing, except for claims, liabilities and obligations of Seller expressly assumed by Buyer under this agreement or paid by insurance maintained by Seller or Buyer.

(2) Any and all damage or deficiency resulting from any material misrepresentation or breach of warranty or covenant, or nonfulfillment of any agreement on the part of Seller under this agreement.

Seller's indemnity obligations under shall be subject to the following:

(1) If any claim is asserted by a third party against Buyer for which Buyer has a claim against Seller for indemnification under the provisions of this paragraph, the Buyer shall give written notice to Seller concerning such claim and Seller shall, at no expense to Buyer defend the claim.

## Default and Enforcement

8. In the event of a default under this Agreement, the defaulting party shall reimburse the non-defaulting party or parties for all costs and expenses reasonably incurred by the non-defaulting party or parties in connection with the default, including without limitation attorney fees. Additionally, in the event a suit or action is filed to enforce this Agreement or with respect to this Agreement, the prevailing party or parties shall be reimbursed by the other party for all costs and expenses incurred in connection with the suit or action, including without limitation reasonable attorney fees at the trial level and on appeal.

**Waiver**

9. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

**Law**

10. This Agreement shall be governed by and shall be construed in accordance with the laws of the State of Florida.

**Entire Agreement**

11. This Agreement constitutes the entire agreement between the parties pertaining to its subject matter and it supersedes all prior contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by all parties. If any provision of this agreement is deemed to be illegal or otherwise void, invalid, or unenforceable, such provision shall be disregarded and the remainder of this agreement without such provision shall not be affected and shall remain in full force and effect.

**Severability**

12. No determination by any court, governmental body, or otherwise that any provision of this Transfer or any amendment of it is invalid or unenforceable in any instance shall affect the validity or enforceability of (a) any other provision or (b) that provision in any circumstance not controlled by the determination. Each provision shall be valid and enforceable to the fullest extent allowed by, and shall be construed wherever possible as being consistent with, applicable law.

IN WITNESS WHEREOF, the parties to this writing have duly executed this Agreement as of the date first written above.

SELLER
_____ [signature]
Eduardo Orlov

BUYER
_____ [signature]
Vasilii Bobkov

Devolro, INC
By: _____ [signature]
Eduardo Orlov, President

**TRADEMARK**
**REEL: 006986 FRAME: 0259**

VB

Minutes Of Meeting Of The Board Of Directors Of Devolro, INC To Resolve The Issue Of Selling 100% of the Company's Outstanding Shares

## MINUTES OF THE MEETING

A meeting of a Devolro, INC's board of directors was held on April 10, 2019, at 9:30 am at the headquarters of the Corporation.

Present at the meeting was Eduardo Orlov, President of Devolro, INC

The Mr. Orlov announced that the purpose of the meeting was to make a resolution on the sale of 100% of the outstanding Corporate shares. The following resolutions were unanimously adopted:

WHEREAS, it is deemed by the board of directors and in the best interests of the Company to sell 100% of its outstanding and issued shares to Vasilii Bobkov;

RESOLVED, that Eduardo Orlov is allowed to sell 100 of the Company's shares (which constitutes 100% of all shares) to Vasilii Bobkov;

There being no further business, the meeting was adjourned.

Dated: April 10, 2019

By: _____
Devolro, INC, represented by Eduardo Orlov, President

By: _____
Eduardo Orlov, Secretary